FILED
2008 Oct-22 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
'08 OCT 22 AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

JOHN HENRY HUNTER, JR., )
Petitioner, )
vs. ) Civil Action No. 08-RRA-0838-M
WARDEN JERRY FERRELL and )
THE ATTORNEY GENERAL FOR )
THE STATE OF ALABAMA, )
Respondents, )

OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Comes now, the Petitioner, John Henry Hunter, Jr., by and through Law clerk, assigned at J.O. Davis Correctional Facility, in the above styled cause and moves this Honorable Court to overrule the Magistrate Judge's Report and Recommendation and as grounds to support his position objects to the Magistrate Judge's Report and Recommendation as follows and shows unto the Court the following:

1. The Magistrate Judge's Report and Recommendation misconstrues the intent of Congress inacting AEDPA and does not take into account the mental deficiency of the Petitioner. Congress enacted the AEDPA to curb prisoners' abuse of the writ and in part to make it "significantly harder for filing second or successive federal

habeas applications under 28 U.S.C. § 2254 to obtain hearings on the merits of their claims." Graham v. Johnson, 168 F.3d 762, 772 (5th Cir. 1999). The Petitioner is not abusing the writ nor is he filing a second or successive federal habeas application.

Exceptions to the 1 year statute of limitations do exist. The U.S. Supreme Court has specifically stated that, when the defendant cannot be "faulted for failing to obtain timely review of a constitutional claim," habeas relief, "might be available" despite the general rule precluding such relief. Lackawanna County District Attorney v. Coss, 532 U.S. 394, 401-405, 149 L.Ed.2d 688, 121 S.Ct. 1567 (2001). The Petitioner asserts that the U.S. Supreme Court would recognize an exception for the mentally incompetent prisoners who could not obtain timely review of their claims due to their mental deficiency. Such exceptions fall within the broad language of Coss that provides for possible exceptions when the prisoner cannot be "faulted for failing to obtain timely review of a constitutional claim." In view of this potential exception, the Petitioner asserts that it deems prudent to consider its application in the instant case. The "faultless exception" has been applied to the principle of equitable tolling for mental incompetency. The Fifth Circuit Court of Appeals has "recognized the possibility that mental incompetency might support equitable tolling of a limited period" in the context of § 2254 actions. See Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (citing Hood v. Sears

Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999); Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003) (remanding case for further factual development on issue of whether petitioner's mental illness prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling).

The Petitioner offers the following except from Lawrence R. Maier, Ph.D., a licensed Psychologist and Certified Forensic Examiner, when Psychologist Maier interviewed and examined the Petitioner on April 25, 1997, in pertinent part: (See Attached Report)

"Some assessment difficulties were encountered, due to defendant's (Hunter) Mental Retardation and to a severe expressive speech disorder, present since birth." (Report, pg. 1)

"There is a history of Special Education services throughout his (Hunter) eight or nine years of formal education, due to documented Mental Retardation." (Report, pg. 2)

"Although no school records were available, Mr. Hunter did receive a Psychological Evaluation in August of 1995, by Gadsden Psychological Services. That report shows the administration of the Wechsler Adult Intelligence Scale-R - the best adult intelligence test on the market. That administration of the WAIS-R showed a Verbal IQ of 57, a Performance IQ of 59, and a Full-Scale IQ of 59. An average score on the

WAIS-R in all three areas falls between the IQ Range of 90 and 110. Mr. Hunter's scores are apprecrablly low, all falling at the 1st Percentile. Thus, 99 out of a hundred other people Mr. Hunter's age would obtain higher IQ scores on the same instrument. The Full-Scale IQ of 59 falls at the lower end of the Mildly Retarded range, and is Consistent with defendant's overall intellectual presentation on this date. No doubt school records would also show intelligence test scores in the Retarded range, and I do not doubt the validity of the 1995 scores obtained - and just reported. Mr. Hunter's intellectual slowness is obvious to anyone who talks to him for more than a few moments." (Report, page 2).

"Mr. Hunter's Mental Retardation was quite obvious. There is impaired judgment and insight; his problem-solving skills overall are quite limited;..." (Report, pg. 3).

"As noted, judgment, overall problem-solving, and insight are moderately to severly impaired, Compared to average expectations.

Based on a careful review of all available information including Current clinical impressions, the following diagnostic impressions are offered for the Court's consideration (DSM-IV):

AXIS I: Adjustment Disorder with Anxious Mood.

AXIS II: Mental Retardation, Degree Mild, Chronic Irreversible, Antisocial Personality Disorder There is no known treatment for defendant's Mental Retardation. It has apparently been present lifelong, and been accompanied by very poor performance personally, vocationally, educationally, and obviously in a social sense as well. He is not able to function independently in society and should be placed indefinitely in a sheltered, structured environment where antisocial behavior can be controlled and where his limited problem-solving skills will allow for needed maintenance and care from others. Obviously such has not existed to date in his dysfunctional and unsupervising family, and apparently severe antisocial behavior has resulted." (Report, pg. 3).

"He (Hunter) also knows that a Jury decides guilt or not but he lacks sufficient information on his rights as a Defendant." (Report, Pg. 4). "Mr Hunter's appraisal of available legal defenses is rated as moderately impaired, as is his capacity to disclose to his attorney pertinent facts, his ability to meaningfully participate in the planning of legal strategies, and in his capacity to testify relevantly overall... He will not be an easy man to legally represent." (Report, pg. 4). "My biggest area of concern has to do with his ability

To assist his attorney in his own defense." (Report, pg. 4).

The Report's author, Dr. Maier, is concerned throughout the report of the Petitioner's "Mental Retardation" as "being quite obvious"; "impaired judgment"; "irreversible"; "no known treatment"; "been present lifelong"; "assessment difficulties" because of the Mental Retardation and the biggest concern "has to do with his ability to assist his attorney in his own defense."

2.) The Petitioner timely asserted his claim against his his 1999 guilty plea convictions in the state courts and survived; and only then after having the assistance of inmate law clerks because he could not manage his affairs or understand his legal rights and act upon them. The claim of that the trial court was without jurisdiction to render judgment or to impose his sentence because he was not mentally competent at the time he pleaded guilty is a substantive due-process claim that is not time barred or subject to the procedural bars set out in Rule 32, Ala. R. Crim. P., pursuant to Alabama case law. See Nicks v. State, 783 So.2d 895, 908 (Ala. Crim. App. 1999), cert. quashed, 783 So.2d 926 (Ala. 2000), and Glass v. State, 912 So.2d 285, 288 (Ala. Crim. App. 2004). Should a mentally incompetent petitioner be time barred in federal court when he is not time barred in state court?

Nor To do so undermines and contravenes our system of fair play and justice. The Petitioner asserts and avers, through legal assistance of a law clerk, that his mental retardation prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling.

WHEREFORE THE PREMISES CONSIDERED, Considering the foregoing, the Petitioner prays this Honorable Court to overrule the Magistrate Judge's Report and Recommendation; Petitioner further prays this Honorable Court to Order a factual development on the issue of whether Petitioner's mental retardation prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling and to appoint counsel for the mentally retarded Petitioner in the interests of Justice.

Done this the 18th day of October, 2008.

[signature]
By: Law clerk, Henry Byrd
AIS# 236372
Dorm - O-26A
J.O. Davis Corr. Facility
Fountain - 4000
Atmore, AL. 36503-4000

Respectfully submitted,
[signature]
John Henry Hunter, Jr., pro se
AIS#
Dorm - O- 9B
J.O. Davis Corr. Facility
Fountain - 4000
Atmore, AL. 36503-4000

CERTIFICATE OF SERVICE

I, John Henry Hunter, Jr., do hereby certify that I have this the 18 day of October, 2008 served a copy of the foregoing on the following by placing the same in the institutional legal mail box located at J.O. Davis Corr. Facility for the prison officials to place in the U.S. Mail, first-class postage prepaid, properly addressed as follows, under the penalty of perjury and pursuant to 28 U.S.C. §1746:

Cecil G. Brendle Jr.
Office of the Attorney General
STATE OF ALABAMA
11 S. Union St.
Montgomery, AL. 36130-0152

Respectfully
[signature]
John Henry Hunter, Jr. pro se

LAWRENCE R. MAIER, Ph.D.
*Licensed Psychologist*
*Certified Forensic Examiner*

Exhibit #A



209 Lincoln Street
Huntsville, AL 35801
Telephone: (205) 536-3005
Fax: (205) 536-3089

**OUTPATIENT FORENSIC EVALUATION REPORT**

**NAME:** John Henry Hunter, Jr.
**DATE OF BIRTH:** December 31, 1976
**CHRONOLOGICAL AGE:** 20 Years
**ETOWAH COUNTY CASE NUMBERS:** CC95-1071
**DATE OF EVALUATION AND REPORT:** April 25, 1997

**REFERRAL INFORMATION**

Mr. J.H. Hunter, Jr. is a 20-year-old, never-married, illiterate, black male, court-ordered for assessment of Competency to Stand Trial and Criminal Responsibility by the Honorable Circuit Court Judge William Cardwell, Jr. He faces one count of Murder plus 13 subsequent charges including Attempted Murder. There has been no prior contact with this defendant. This assessment, done in my Huntsville, Alabama, office, was approved by authorities from the Taylor Hardin Secure Medical Facility.

**NOTIFICATION OF RIGHTS**

Prior to beginning this examination, Mr. Hunter was informed as to the two primary purposes for the assessment and the limited confidentiality of the information to be obtained. He was told that my opinions would be submitted to the Court in the form of a written report, with copies made and sent to his attorney and to the District Attorney. He was also told that these opinions might be used in later court proceedings, in the form of either the written report or testimony by this examiner. He was further told that this information could be used to help reach decisions concerning his competency to stand trial and/or his mental state at the time of the alleged offense, but that none of the information could be used as evidence against him concerning the Murder charge. The defendant stated that he was unable to read or write, other than his name, but he also stated he understood the oral explanation of the purposes and limited confidentiality of the evaluation. He agreed to proceed although I doubt seriously the extensiveness of his understanding of the above conditions. He was at first reluctant to sign the Defendant Notification" form but eventually did so when I told him that his attorney had requested the assessment and knew of his scheduled appointment. He did refuse to sign a release form needed to obtain federal governmental reimbursement under Social Security eligibility rules. Some assessment difficulties were encountered, due to defendant's Mental Retardation and to a severe expressive speech disorder, present since birth. Because of these handicaps, care was taken to frequently repeat questions and to re-phrase his answers to insure adequate communication. I feel a valid assessment did occur.

**SUMMARY OF ALLEGED OFFENSE**

According to information provided by the District Attorney's office of Mr. James Hedgspeth, Jr. defendant did, on 6-21-95, shoot to death with a handgun, an adult male, thought by defendant to be threatening. He fled the crime scene but was brought to authorities the next day by his mother. He




then confessed. Apparently he was held in jail for an unknown time after his arrest, then bonded free, but rearrested and jailed some three months ago when additionally charged with several subsequent crimes.

Mr. Hunter's past criminal record shows numerous convictions between 1991 and 1995. These are in addition to the numerous reported charges that have been levied after the 6-21-95 Murder.

## DATA SOURCES

Circuit Court Order for Evaluation.
Incident Report.
Defendant Confession/Statement.
Mental Health Center Records From:
Gadsden Psychological Services (Disability Evaluation Report 8-16-95).
Grand Jury Indictment.
Arrest History.
Defense Attorney Information Form.
Police Investigation Report.
Call to Jail Personnel Regarding Meds/Behavior.
Signed Waiver of Miranda Rights.
Alabama Board of Pardons Investigation Report (2-26-96)

## PSYCHOLOGICAL/PSYCHIATRIC/SUBSTANCE ABUSE HISTORY

Records suggest no prior street drug or alcohol abuse including no hospitalizations or outpatient treatment for same. There is a history of Special Education services throughout his eight or nine years of formal education, due to documented Mental Retardation. Although no school records were available, Mr. Hunter did receive a Psychological Evaluation in August of 1995, by Gadsden Psychological Services. That report shows the administration of the Wechsler Adult Intelligence Scale-R - the best adult intelligence test on the market. That administration of the WAIS-R showed a Verbal IQ of 57, a Performance IQ of 59, and a Full-Scale IQ of 59. An average score on the WAIS-R in all three areas falls between the IQ range of 90 and 110. Mr. Hunter's scores are appreciably low, all falling at the 1st Percentile. Thus, 99 out of a hundred other people Mr. Hunter's age would obtain higher IQ scores on the same instrument. The Full-Scale IQ of 59 falls at the lower end of the Mildly Mentally Retarded range, and is consistent with defendant's overall intellectual presentation on this date. No doubt school records would also show intelligence test scores in the Retarded range, and I do not doubt the validity of the 1995 scores obtained - and just reported. Mr. Hunter's intellectual slowness is obvious to anyone who talks to him for more than a few moments.

## CURRENT CLINICAL ASSESSMENT

Defendant was brought to my office by two deputies from the Etowah County Sheriff's Department. He was dressed in white tennis shoes and a clean, two-piece-orange, prison shirt and pants. He was of average size and build with black, neat, curly hair. He wore a small goatee. Several healed scars or cuts were on his hands and arms, and he also showed me a belly scar from a knife wound experienced after the Murder of current interest. He was cuffed at the ankles throughout the two-hour evaluation.





Defendant showed a noticeable expressive speech aphasia. Although much of his speech was understandable, there was extensive slurring, sound omissions, incomplete sentence structure, and some stammering. Plus, he spoke quite softly and when emotional, became completely nonunderstandable. He cried on several occasions -- once quite intensely -- particularly when asked to recite the crime story and some subsequent legal events including the "Attempted Murder."

Mr. Hunter's Mental Retardation was quite obvious. There is impaired judgment and insight; his problem-solving skills overall are quite limited; he was oriented to person, time, place, and purpose; and he had some evidence of intact short- and long-term memory functioning. As for the quality of his thinking, it was concrete and tinged with fear particularly when focused on crime events. I saw no evidence of past or present hallucinations or delusions; his abstractive skills were very limited. As for his current emotional state, that seemed to be flat and bland, except when thoughts were crime focused -- then he became upset, tearful, and somewhat apprehensive about the future, with mumbling, repetitiveness, and still remaining obvious fear, demonstrated. As noted, judgment, overall problem-solving, and insight are moderately to severely impaired, compared to average expectations.

Based on a careful review of all available information including current clinical impressions, the following diagnostic impressions are offered for the Court's consideration (DSM-IV):

Axis I: Adjustment Disorder With Anxious Mood.

Axis II: Mental Retardation, Degree Mild, Chronic, Irreversible.
Antisocial Personality Disorder.

There is no known treatment for defendant's Mental Retardation. It has apparently been present lifelong, and been accompanied by very poor overall performance personally, vocationally, educationally, and obviously in a social sense as well. He is not able to function independently in society and should be placed indefinitely in a sheltered, structured environment where antisocial behavior can be controlled and where his limited problem-solving skills will allow for needed maintenance and care from others. Obviously such has not existed to date in his dysfunctional and unsupervising family, and apparently severe antisocial behavior has resulted.

No judicially-ordered emergency psychiatric care is needed or recommended.

**FORENSIC ASSESSMENT**

**Competency to Stand Trial**

In order to help in the assessment of Mr. Hunter's ability to assume the role of a competent defendant in a court procedure, he was administered the Competency to Stand Trial Assessment Instrument (CAI) as part of this evaluation. The CAI is a semi-structured interview device designed to measure a defendant's knowledge and understanding in 13 areas related to competency to stand trial. It should be remembered that this defendant has had a fair amount of prior experience with the criminal justice system, going back at least several years into his mid-teens.

Mr. Hunter is aware of his situation with the Court and he has a functional, though simplistic understanding of the nature and object of court proceedings and participants. He is aware of the charge against him (i.e. that he killed with a gun) and he is knowledgeable that he could be locked up and denied freedom if found guilty. He has no idea of possible sentence length, perhaps because such has not yet been discussed. He is familiar with the roles and responsibilities of key court participants: for example a Defense Attorney is to "help me," a Prosecuting Attorney "tries to hang me ... tries to find the truth" .... A Judge "gives you time (in prison or jail) if you are guilty," and he does know the difference between guilty and not guilty. He also knows that a Jury decides guilt or not but he lacks sufficient information on his rights as a Defendant. He well knows (although again quite simplistically), the role of Witnesses in a court proceeding.

Mr. Hunter's appraisal of available legal defenses is rated as moderately impaired, as is his capacity to disclose to his attorney pertinent facts, his ability to meaningfully participate in the planning of legal strategies, and in his capacity to testify relevantly overall. Although these moderately deficient areas are fairly significant, they can be overcome and managed by court patience and attorney explanation and education. As noted earlier, his communicative skills are further handicapped by a severe expressive aphasia. He will not be an easy man to legally represent.

On the more positive side, Mr. Hunter's past experiences have taught him far more about the system than could be expected from other Retarded folks without such experience. Thus, there is a simplistic understanding of the adversarial process although I do not think he understands plea bargaining at least in all of its detail. There was no evidence from this evaluation of self-defeating motivation or that unmanageable behavior will occur. He might however show strong affect on the stand but this should not lead to aggression or anything violent.

My biggest area of concern has to do with his ability to assist his attorney in his own defense. This is not so much because he can't provide information or accurate facts, but because he communicates so poorly and could thus be easily misunderstood. Great care should be taken to understand this man if the crime surrounding circumstances are to be adequately used in his own defense.

In summary, it is my feeling that this defendant is borderline in his overall competency. Normally, someone so intellectually handicapped would probably not have sufficient understanding, but past experience in this case makes him more street-wise and court-wise than would otherwise be expected. Thus, I think with adequate representation and education, he can factually and rationally understand the charge and participate to an adequate degree with his attorney in his own defense. Thus, it is recommended that he be returned to face the pending charge.

**Mental State at the Time of Offense**

Mr. Hunter was also evaluated as to his mental state at the time of the alleged offense in order to determine his criminal responsibility. Considered in this evaluation were Mr. Hunter's self-report and all provided collateral information. Mr. Hunter's thoughts, feelings and actions surrounding the alleged offense were elicited and his responses were given freely, tearfully, and with obvious accompanying fear, both then and now. His memory was intact and he was able to give an eventually understandable account of the incident. He denied his guilt claiming that he was intimidated and threatened -- both by knife and by verbal talk. No alcohol or drugs were involved. Nor is there any evidence that he was psychotic at the time of the crime. True, he was Mentally Retarded with impaired judgment, insight, and problem-solving, but not to an extent where he had

lost his basic understanding of the difference between right from wrong. As for the anxiety and fearfulness which were present during this examination, this is quite understandable -- and suggests him to be an emotionally immature and perhaps over-sensitive young man, but one who has failed to learn proper socialization rules -- substituting instead antisocial behavior even if such is self-protective. As for his emotional state at the time of the crime, that indeed seems to have been strong fear, but not psychosis or loss of ability to discriminate right from wrong, or to adhere to the right for that matter if he had chosen.

Therefore, despite obvious and documented Mild Retardation, he was not significantly mentally ill, and he could have behaved differently had he chosen. Thus, there are not sufficient grounds to support a mental state defense, in my opinion.

## SUMMARY AND RECOMMENDATIONS

Mr. Hunter, facing one 1995 Murder charge as well as several serious subsequent charges, was referred for assessment of Competency to Stand Trial and Criminal Responsibility. Referral was made by Circuit Court Judge William Cardwell, Jr. The forensic evaluation is now complete and opinions are that despite several moderately impaired relevant areas as to his capacities and understanding, he does have sufficient grasp of the adversarial process, the charge against him, and court proceedings generally, and he can assist his attorney meaningfully and with sufficient understanding, if he wishes. This is not to say it will be easy, for he is indeed very concrete and limited in his ability to plan ahead and use language, both for problem-solving and for expressive communication. Yet, one senses that in some areas at least there is greater comprehension than test scores would indicate, particularly in the criminal justice area where he is in some respects an "old pro." Still, he is clearly Mentally Retarded, and should the Court reach disposition other than imprisonment, it should expect continued antisocial behavior if he is not somehow placed in a more protective, supervised environment. For now however, he does have minimal capacity to meet competency requirements, and he should be returned to Court to face the pending charge. He does now, and did at the time of the crime, know the difference between right from wrong, and his apparent overriding fear for his own life was not in my estimation sufficient enough to remove his basic understanding of right from wrong. Therefore, there are not sufficient grounds for a mental state defense.

As a psychologist, I recognize that questions of Competency to Stand Trial and Criminal Responsibility are properly matters for the Court and/or jury to decide. Therefore, the opinions expressed in this report are advisory only. I would be happy to provide additional testimony and/or material should the Court require.

Respectfully submitted,

L.R. Maier, Ph.D.

Lawrence R. Maier, Ph.D.
Certified Forensic Examiner
Licensed Psychologist

LRM:lh